# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMELITO EXMUNDO, | CASE NO. 1:06-cv-00205-AWI-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| A.K. SCRIBNER, et al., | Doc. 64 |
| Defendants. | |
| | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations**

**I. Procedural Background and *Woods v. Carey***

On February 23, 2006, Plaintiff Emelito Exmundo ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action, pursuant to 42 U.S.C. § 1983. Doc. 1. On October 8, 2010, the Court screened Plaintiff's second amended complaint and issued an order requiring Plaintiff to file an amended complaint or notify the Court of willingness to proceed on cognizable claims against Defendants Bell and Johnson for Eighth Amendment excessive force and against Defendant Bell for First Amendment retaliation. Doc. 35. On November 3, 2010, Plaintiff notified the Court of his willingness to proceed on the cognizable claims, and on November 15, 2010, the Court dismissed all remaining claims and defendants. Docs. 37, 38.

On December 13, 2010, the Court issued a second informational order, advising Plaintiff that Defendants may file a motion for summary judgment and how Plaintiff must oppose the motion in order to avoid dismissal, pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Doc. 41.

On June 21, 2012, Defendants filed a motion for summary judgment. Doc. 64. On July 6,

2012, the Ninth Circuit found that the notice and warning of requirements for opposing a defendant's motion for summary judgment should be issued contemporaneously when a defendant files a motion for summary judgment, as opposed to a year or more in advance. *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012). On July 18, 2012, the Court issued an amended second informational order to Plaintiff, in accordance with *Woods*. Doc. 65.

On September 28, 2012, Plaintiff filed an opposition to the motion for summary judgment, declaration, and statement of disputed facts. Doc. 69. On September 17, 2012, Defendants filed a reply to Plaintiff's opposition. Doc. 71.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### III. Undisputed Facts, Plaintiff's Declaration, and Medical Records in Opposition to Motion for Summary Judgment

Since 1992, Plaintiff has been an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Pl. Opp'n at 16, Decl. ¶ 1, Doc. 69. From 2003 to 2007, Plaintiff was in custody at California State Prison-Corcoran ("CSP-Corcoran"). Pl. Opp'n at 16, Decl. ¶ 2. During February 2005 to October 2005, Defendants Bell and Johnson were correctional officers at CSP-Corcoran. Defs. UF ¶ 1, Doc. 64-2.

From February 8, 2006, to November 21, 2007, Plaintiff filed nineteen grievances concerning conditions at CSP-Corcoran. Defs. UF ¶ 22.

In February 2005, Defendant Bell threatened and frightened Plaintiff not to answer the phone interview by Lieutenant Hill for a grievance Plaintiff filed. Pl. Decl. ¶ 5. After the interview and Plaintiff filed a grievance, Defendant Bell harassed Plaintiff, spit on his food, threatened him, and stole his food. *Id.* ¶ 7.

On October 5, 2005, correctional officer Lopez was ready to handcuff Plaintiff and escort him to the shower, when Defendant Bell told him to remove the handcuffs and that Plaintiff is not going to the shower. *Id.* ¶ 8. When Lopez left, Defendant Bell came back to Plaintiff's cell door with a trash can and threatened him that he will search and trash his cell and take property if he takes a shower. *Id.* ¶ 9. When Lopez returned and asked if Plaintiff wanted a shower, Plaintiff said yes and Lopez escorted him to the shower. *Id.* ¶ 12.

When Plaintiff was finished showering and drying himself off, he saw Defendant Bell searching his cell, throwing some things and his lunch bag in the trash, and sneering at him. *Id.* ¶ 13. Plaintiff just smiled and shrugged his shoulders. *Id.* ¶ 14. Defendant came to the shower door, he smelled strongly with alcohol and he was red-faced. *Id.* ¶ 15. Plaintiff asked him if he was drunk. *Id.* ¶ 16. Defendant Bell screamed that Plaintiff was "holding the showers hostage." *Id.* ¶ 17. Plaintiff said he wanted to talk to the sergeant. *Id.* ¶ 18. Defendant Bell refused to call the sergeant because he did not want the sergeant to know he threw away Plaintiff's lunch and that he was drunk. *Id.* ¶

1    19.

2           Defendant Bell refused to handcuff Plaintiff, but when another correctional officer [sic]
3    Defendant Bell told Plaintiff to turn around and handcuffed him. *Id.* ¶ 22. Defendant Bell handcuffed
4    Plaintiff with his back to the officers, according to procedure. Defs. UF ¶ 5. Defendant Bell
5    handcuffed him very tightly so that it hurt. Pl. Decl. ¶ 22.

6           There was water on the floor, so Plaintiff had to turn his head to look down and see where
7    he was walking. *Id.* ¶ 23. Prison policy forbids inmates in ad-seg and the Security Housing Unit
8    (SHU) from turning around and facing the officers without permission during an escort. Doing so
9    is an act of aggression and the officers may use reasonable force to control the inmate. Defs. UF ¶
10   10. Plaintiff never faced Defendants, said anything, or acted in any way that can be construed as an
11   act of aggression. Pl. Decl. ¶ 26.

12          Defendants Bell and Johnson were twisting his arms and wrist so that it felt like his shoulder
13   sockets were being pulled out. *Id.* ¶ 24. Once he got to his cell, Defendants Bell and Johnson kicked
14   Plaintiff at [sic] the back, pulled him out of his cell, lifted him off the floor, and slammed him
15   backwards on the cement floor. *Id.* ¶ 25. Plaintiff hit his head and lost consciousness. *Id.* When
16   Plaintiff regained consciousness, he could not breathe because someone was choking him. *Id.* ¶ 27.
17   Plaintiff felt someone punching him and kicking him and felt both their knees pressing his back. *Id.*
18   ¶ 28. Plaintiff screamed at them that he was hurting very bad but instead someone dropped a knee
19   to his spine and he felt a crack. *Id.* ¶ 28. Plaintiff did not resist in any way because both Defendants
20   weighed six hundred pounds together and were kneeling on his back. *Id.* ¶ 29. Defendant [Plaintiff
21   does not say which] put on the iron chain and cut his foot. *Id.* Both Defendants dragged him like an
22   animal and threw him inside a steel cage. *Id.* ¶ 30. Defendant Johnson spit at him and laughed. *Id.*
23   ¶ 31.

24          Defendants Bell and Johnson then escorted Plaintiff to see a licensed vocational nurse (LVN),
25   who medically cleared him to return to his cell. Defs. UF ¶ 14. The LVN noted a scratch on the back
26   of Plaintiff's left knee and right hip, pain in his right wrist, and a cut on his right foot. *Id.* ¶ 15.

27          Defendant Bell used excessive force against Plaintiff because of the phone interview and that
28   he refused to withdraw the grievance. Pl. Decl. ¶ 6. Plaintiff has personally observed or seen

Defendants Bell and Johnson use excessive force against other inmates. *Id.* ¶ 4.

On October 5, 2005, Plaintiff was found guilty of a CDC 115-Rule Violation Report for resisting staff resulting in the use of force. Defs. UF ¶ 20.

Plaintiff attached medical records to his opposition. Pl. Opp'n at 38-44, Ex. B, Doc. 69. On December 21, 2005, Plaintiff had an x-ray of his right shoulder and right scapula, which showed no evidence of fracture or dislocation and minimal arthritic changes. *Id.* at 44. On April 6, 2006, Plaintiff had an MRI of the lumbosacral spine, which showed degenerative disc disease, spondylolysis at L5, disc bulge at L3/L4, and spondylolisthesis at L5-S1. *Id.* at 41-42. On November 20, 2006, Plaintiff had an x-ray of the lumbosacral spine, which showed degenerative disc disease, spondylolysis at L5, and spondylolisthesis at L5-S1. *Id.* at 43. On December 16, 2008, Plaintiff had an examination and review of an MRI from May 2007, which showed degenerative disc disease at three levels and that Plaintiff may be a candidate for back surgery. *Id.* at 39-40.

## IV. Analysis

### A. Legal Standard for Plaintiff's Claims

#### 1. First Amendment Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action . . ." *Brodheim*, 584 F.3d at 1270. Plaintiff must allege a causal connection between the adverse action and the protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

#### 2. Eighth Amendment Excessive Force

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Martinez*, 323 F.3d at 1184.

The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Hudson*, 503 U.S. at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10. "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.* at 7.

### B. Genuine Dispute of Material Fact

Defendant Bell contends that he did not deny food to Plaintiff, spit on his food, or take any action against Plaintiff because he had filed a grievance. Defs. Mot. Summ. J. Bell Decl. ¶ 19, Doc. 64-3. In Plaintiff's declaration, he states Defendant Bell threatened, frightened, and harassed Plaintiff, spit on his food, stole his food, and used excessive force because Plaintiff filed a grievance. Pl. Decl. ¶¶ 5-7, Doc. 69.

Defendants Bell and Johnson contend that they did not strike Plaintiff with any blows, kick him, or use any weapons on him. Defs. Mot. Summ. J. Bell Decl. ¶ 17, Johnson Decl. ¶ 16, Doc. 64-3. Bell and Johnson contend that they used the minimum force that they believed was necessary to bring Plaintiff under control. Bell Decl. ¶ 18; Johnson Decl. ¶ 17. In Plaintiff's declaration, he states Defendants Bell and Johnson were twisting his arms and wrist so that it felt like his shoulder sockets were being pulled out. Pl. Decl. ¶ 24. Once he got to his cell, Defendants Bell and Johnson kicked Plaintiff at [sic] the back, pulled him out of his cell, lifted him off the floor, and slammed him

1  backwards on the cement floor. *Id.* ¶ 25. Plaintiff hit his head and lost consciousness. *Id.* When
2  Plaintiff regained consciousness, he could not breathe because someone was choking him. *Id.* ¶ 27.
3  Plaintiff felt someone punching him and kicking him and felt both their knees pressing his back. *Id.*
4  ¶ 28. Plaintiff screamed at them that he was hurting very bad but instead someone dropped a knee
5  to his spine and he felt a crack. *Id.* ¶ 28. Plaintiff did not resist in any way because both Defendants
6  weighed six hundred pounds together and were kneeling on his back. *Id.* ¶ 29. Defendant [Plaintiff
7  does not say which] put on the iron chain and cut his foot. *Id.* Both Defendants dragged him like an
8  animal and threw him inside a steel cage. *Id.* ¶ 30. Defendant Johnson spit at him and laughed. *Id.*
9  ¶ 31.

10  From Plaintiff's declaration, the Court cannot find that there is no genuine dispute of material
11  fact as to whether Defendant Bell retaliated against Plaintiff for filing a grievance or whether
12  Defendants Bell and Johnson used excessive force on Plaintiff. Therefore, Defendants' motion for
13  summary judgment should be denied.

**C. Qualified Immunity**

15  Defendants contend that they are entitled to qualified immunity. Def. Mot. Summ. J. at 7,
16  Doc. 64-1. Government officials enjoy qualified immunity from civil damages unless their conduct
17  violates "clearly established statutory or constitutional rights of which a reasonable person would
18  have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified
19  immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury,
20  the facts alleged show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533
21  U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 227 (2009) ("*Saucier*
22  procedure should not be regarded as an inflexible requirement"). The other inquiry is whether the
23  right was clearly established. *Saucier*, 533 U.S. at 201. The inquiry "must be undertaken in light of
24  the specific context of the case, not as a broad general proposition . . . ." *Id.* "[T]he right the official
25  is alleged to have violated must have been 'clearly established' in a more particularized, and hence
26  more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official
27  would understand that what he is doing violates that right." *Id.* at 202. In resolving these issues, the
28  court must view the evidence in the light most favorable to plaintiff and resolve all material factual

disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, based Plaintiff's declaration, Defendants are not entitled to qualified immunity. Drawing all reasonable inferences in favor of Plaintiff as the non-moving party, there is a genuine dispute of material fact as to Plaintiff's claims for retaliation and excessive force. Essentially, the parties dispute whether Defendant Bell did any acts in retaliation for Plaintiff's grievance; whether Plaintiff disobeyed an order; the extent of the force used by Defendants on Plaintiff; and whether the force used was reasonable and necessary. Therefore, when construing the facts alleged in the light most favorable to Plaintiff, the undersigned cannot recommend finding qualified immunity. *Harlow*, 457 U.S. at 818; *Saucier*, 533 U.S. at 201.

### V. Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   December 17, 2012

UNITED STATES MAGISTRATE JUDGE